```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
GB LODGING, LLC and ANOLAG JACPOT 2 JV
LLC,

                Plaintiffs,                   MEMORANDUM AND ORDER

          - against -                         21 Civ. 1154 (NRB)

DIONIS RODRIGUEZ,

                Defendant.
----------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

This case arises out of a dispute between defendant, Dionis Rodriguez, and his former employer, plaintiff GB Lodging, LLC ("GB Lodging"). Defendant's employment with GB Lodging began in February 2012 and lasted less than two years. Thereafter, in letters dated in 2016 and 2020, defendant demanded payment pursuant to two agreements he signed in 2012 and 2013 relating to his employment. Nearly eight years after defendant left GB Lodging, plaintiffs brought a suit for declaratory judgment seeking a declaration that defendant is not owed any payments under the agreements.

Presently before the Court are defendant's motions to dismiss and for sanctions. For the following reasons, defendant's motion to dismiss is granted and defendant's motion for sanctions is denied.

1

I.  **Background**

   **A. Factual Background**[1]

GB Lodging is a hotel development and asset management firm. SAC ¶ 4.  GB Lodging is registered and incorporated in Delaware as a limited liability company with its principal place of business at 140 Broadway, New York, New York.  Id. ¶ 1.  Plaintiff Anolag Jacpot 2 JV, LLC ("Anolag") is an affiliate of GB Lodging.  ECF No. 28-3 at 1.  It is also registered and incorporated in Delaware as a limited liability company with its principal place of business at 140 Broadway, New York, New York.  SAC ¶ 1.  GB Lodging's principals are Bruce Blum and Allen Gross.  ECF No. 28-1 at 2. Blum is the president and cofounder of GB Lodging, ECF No. 28-1 at 9, and Blum is also an authorized signatory for Anolag, ECF No. 28-3 at 7.

On or about January 26, 2012, defendant Dionis Rodriguez was hired by GB Lodging as its Executive Vice President, Acquisitions & Development, and agreed to be bound by GB Lodging's Terms of Employment, which he and Blum signed.  SAC ¶ 5, ECF No. 28-1 at 8.

---

[1]   The following facts are drawn from the plaintiffs' Second Amended Verified Complaint ("SAC"), ECF No. 20, and from the Terms of Employment, ECF No. 28-1, the Anolag Agreement, ECF No.28-3, and defendant's demand letters, ECF Nos. 25-3 and 34-11, which the Court finds are incorporated by reference into the SAC. See DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (holding for a document to be incorporated by reference, "the complaint must make 'a clear, definite and substantial reference to the documents'") (quoting Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003)).  For the purposes of the Court's ruling on the instant motion, the Court draws all reasonable inferences in plaintiffs' favor.  See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

Rodriguez commenced his employment on February 1, 2012. SAC ¶ 18. In part, the Terms of Employment provided that:

> In the event that GB Lodging sponsors a fund, syndicated investment vehicle for purposes of acquiring a property (ies) or directly or indirectly acquires a property (ies) or makes an investment (s) located anywhere in the world, you will receive, without charge, a 5% interest in the promoted participation earned and received by GB Lodging, LLC or its affiliate(s) after (i) the full return of GB's Principals' (Bruce Blum and Allen Gross) capital investment and (ii) a return on GB's Principals' capital investment of 12%.

ECF No. 28-1 at 2. The Terms of Employment further stated that if GB Lodging acquired a specific property referred to as the Beekman Palace, Rodriguez's "promoted participation will be 2% in the promoted participation earned and received by GB Lodging, LLC or its affiliate(s) after the full return of the GB Lodging's principals' capital investment and a return on their capital investment of 12%." Id. The Terms of Employment also required Rodriguez to maintain the confidentiality of GB Lodging's "Confidential Information" and to return any Confidential Information upon termination.[2] Id. at 6. Further, the Terms of

---

[2] The Terms of Employment define Confidential Information as, "the business, financial, accounting, operational, market and legal reports, documents and analyses, plans and designs, tax information, research surveys and other records, documents, files and computer models relating to GB Lodging, its affiliates and the investments made by these entities, which investments shall also include those prospective investments that GB Lodging has engaged in meaningful due diligence and/or negotiation activities; provided, however, Confidential Information shall not include any of the foregoing from and after the date such information shall become publicly available or is otherwise disclosed to, or by, a third party (who is not then bound by a confidentiality

Employment also set out several potential alternatives regarding the termination or continuance of any equity investment Rodriguez made in GB Lodging that could occur if Rodriguez left GB Lodging, depending on whether his employment agreement was terminated with or without cause.³  Id. at 6-7.

Plaintiffs allege that Rodriguez did not perform his duties satisfactorily.  SAC ¶¶ 18-25.  After it became clear that the principals of GB Lodging were not satisfied with Rodriguez's performance, Rodriguez informed GB Lodging that he intended to leave the company to pursue other opportunities.  Id. ¶¶ 27; 34.  Thereafter, GB Lodging sent Rodriguez a draft Separation Agreement, which was not ultimately signed.  Id. ¶¶ 35; 40.

Nevertheless, on September 16, 2013, Rodriguez entered into a second agreement related to his employment entitled the "Anolag Jacpot 2 JV LLC Profit Participation Agreement" (hereinafter, the "Anolag Agreement," and together with the "Terms of Employment," the "Agreements").  Id. ¶ 15; ECF 28-3 at 2.  This agreement

---

agreement with respect to such information) by someone other than you."  ECF No. 28-1 at 6.

³   The Terms of Employment define "Cause" to mean: "(i) the respective party's willful and continued failure to perform substantially its duties under this agreement, (ii) the respective party's willful engagement in conduct, which is demonstrably injurious to the other party, monetarily or otherwise, (iii) with respect to a person employed by GB Lodging, such party's habitual absenteeism, chronic alcoholism or any other form of addiction, (iv) a final non-appealable adjudication against the party's interest in a criminal or civil proceeding, (v) the respective party's filing for or becomes subject to a bankruptcy proceeding which is not dismissed within 120 days, or (vi) if the party is in material breach of this agreement, and, in the case of clauses (i), (ii), (iii), and (iv) above, the party fails to cure such breach or correct such conduct after notice to said party and the expiration of a reasonable period of time to so cure or correct."  ECF No. 28-1 at 5-6.

provided in relevant part that ". . . for each calendar year during the term of this Agreement the LLC [Anolag] shall pay to the Participant [Rodriguez] an amount equal to Profit Percentage multiplied by the LLC's Distributions for such calendar year (payable on or before December 31 of such calendar year)[.]" ECF No. 28-3 at 3.  The "Profit Percentage" was defined to be 5%.  Id.

The Anolag Agreement did not specify its term, but provided that "the Participant's rights under this Agreement (including the right to receive any future Profit Participation Payments) shall terminate in the event that (i) the Participant's employment with GB is terminated 'for cause' (as determined pursuant to the provisions of the Employment Agreement) . . . or (iii) the LLC sells the [Ambassador Hotel] property other than to an affiliate." Id.

On September 24, 2013, Rodriguez left GB Lodging.  Id. ¶ 42. The circumstances of Rodriguez's departure, which are very much in dispute, are at the heart of GB Lodging's position that they do not owe Rodriguez any payments.  See id. ¶¶ 41-48.

Since 2013, the parties have engaged in "ongoing, albeit sporadic, settlement discussions." Id. ¶ 49.  Rodriguez also sent plaintiffs two demand letters seeking payments under the Agreements.  The first, dated November 1, 2016, sought a payment of $230,693 relating to the sale of the property formerly known as the Ambassador Hotel Property and the promoted participation

5

interest described in the Terms of Employment, including a 2% interest in the profit (after a 12% return to members) earned by GB Lodging and its affiliates on the Beekman Palace.  SAC ¶ 51; ECF No. 25-3 at 1-2.  The second letter, dated December 28, 2020, demanded the same payment relating to the Ambassador Hotel Property, and further sought documentation sufficient to support the calculation of the promoted participation interest by January 6, 2021.  ECF No. 34-11 at 2.  It also sought information relating to a property at 61 Bond Street, Brooklyn, New York (the "Bond Street Property") and a property at 5 Beekman Street, Manhattan, New York in order to allow Mr. Rodriguez to calculate the amounts he believed he was owed in connection with those properties.  Id. at 2-3.  A proposed tolling agreement was attached to this letter. Id. at 6-11.  It was not signed.  No payments have been made.

### B. Procedural History

This case's procedural history is unusual.  On January 21, 2021, plaintiffs filed a verified complaint in New York Supreme Court, New York County, containing two causes of action for declaratory judgment and two causes of action for breach of the Terms of Employment and the Analog Agreement.  ECF No. 1. Defendant removed the case to this Court on February 9, 2021.  Id. Thereafter, on February 16, 2021, defendant requested a premotion conference in advance of his anticipated motion to dismiss.  ECF No. 3.  In response, on February 19, 2021, plaintiffs filed a

6

letter stating that that they intended to amend the complaint. ECF No. 5.  On March 4, 2021, defendant requested a premotion conference and leave to file a motion for sanctions, to which plaintiffs responded on March 9.  ECF No. 6-7.

On March 25, 2021, plaintiffs filed an amended complaint. ECF No. 9.  This complaint dropped the claims for breach of contract and modified the declaratory judgment causes of action. Id.  Thereafter, defendant again sought to move to dismiss and to move for sanctions, which plaintiff opposed.  ECF Nos. 12-17.  On April 15, 2021, this Court granted defendant leave to file his motions without the necessity of a premotion conference.  ECF No. 18.  In that same order, the Court granted plaintiffs leave to file an amended complaint within two weeks.  Id.  On April 29, 2021, the plaintiffs filed a second verified amended complaint seeking a declaratory judgment that, inter alia, the defendant is not entitled to any payments from the plaintiffs.  ECF No. 20.

On May 10, 2021, the parties filed an agreed briefing schedule.  The motions were fully briefed as of July 13, 2021. ECF No. 24-37.

## II. Legal Standard
### A. Motion to Dismiss

To withstand a Rule 12(b)(6) motion, the non-movant's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [pleaded] fact[s] . . . allow[] the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." Id. While the Court accepts the truth of the pleaded facts, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

### B. Declaratory Judgment Act

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "Courts in this Circuit and elsewhere, however, have concluded that the federal Declaratory Judgment Act, see 28 U.S.C. § 2201, rather than an otherwise applicable state declaratory judgment act, governs in diversity actions under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938)." Bruno v. Casella Waste Systems, Inc., 616 F. App'x 20, 21 n. 2 (2d Cir. 2015).

"The Declaratory Judgment Act confers on federal courts 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" Peconic Baykeeper, Inc. v. Suffolk County, 600 F.3d 180, 187 (2d Cir.2010) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)).  "The propriety of issuing a declaratory judgment may depend upon equitable considerations and is also informed by the teachings and experience concerning the functions and extent of federal judicial power." Green v. Mansour, 474 U.S. 64, 72 (1985) (citations and quotation marks omitted).

**III. Discussion**

    **A. The Statute of Limitations Applies to Plaintiffs'  
       Declaratory Judgment Claims**

Plaintiffs take the position that defendant is not entitled to the payments that defendant has demanded, or any payment under the Agreements, either because (1) defendant was never entitled to any interest due to the circumstances of his termination or (2) the circumstances of defendant's termination extinguished any interest to which the defendant may have been entitled.  But as plaintiffs admitted at oral argument, in order to find for plaintiffs, this Court must make findings about issues that predate the filing of this case by more than six years, ECF No. 45 at 8:3-11, which indisputably is the relevant statute of limitations, see ECF No. 25 ("Mot.") at 13; ECF No. 33 ("Opp.") at 10 ("There is no

dispute that the applicable statute of limitations is six (6) years."). Because the statute of limitations for plaintiffs' claims ran more than six years before this case was filed, under either theory, plaintiffs' suit is time-barred.

Plaintiffs make two arguments to avoid the statute of limitations bar. First, they contend that the statute of limitations runs from defendant's November 1, 2016 and December 28, 2020 demand letters, not from the underlying events for which they seek a declaratory judgment. See id. at 10-11. Second, plaintiffs contend that if defendant would be able to bring a timely claim for payments pursuant to the Agreements, their declaratory judgment action is also timely because their claims here would constitute a defense to defendant's action. Id. at 12. Both arguments fail as matter of law.

### 1. The Statute of Limitations Does Not Run from the Date of the Demand Letters

Plaintiffs assert that defendant's letters demanding payment gave rise to a justiciable controversy that can be resolved by an action for declaratory judgment. Plaintiffs are incorrect. To determine whether an action for declaratory judgment is time-barred, courts look to whether "the applicable limitations period has run on a direct claim to obtain such relief." 118 East 60th Owners, Inc. v. Bonner Props., Inc., 677 F.2d 200, 202 (2d Cir. 1982). "What determines the applicable limitations period [for a

10

declaratory judgment claim] is the basic nature of the suit in which the issues involved would have been litigated[.]" Id.

The basic nature of plaintiffs' suit if it were to be brought directly is a contract action alleging a breach of the Agreements. New York's statute of limitations for breach of contract actions is six years. N.Y. C.P.L.R. § 213. Therefore, in order for plaintiffs' claims to be viable, they must have accrued on or after January 21, 2015 (within six years before plaintiffs filed their original complaint).[4] Plaintiffs allege that defendant was terminated on September 24, 2013. SAC ¶ 42. As such, the events giving rise to any claim regarding the circumstances of defendant's termination necessarily occurred prior to September 24, 2013. Moreover, as plaintiffs conceded at oral argument, there is no act in the last six years that would constitute a breach of the Terms of Employment. ECF No. 45 at 8:7-11. Plaintiffs cannot circumvent the statute of limitations by bringing their claims as an action for declaratory judgment.[5]

---

[4] We note that plaintiffs had the opportunity to timely bring their suit in 2013, after receiving Rodriguez's initial demand letter.

[5] We note that, should defendant bring a claim for payments under these Agreements, plaintiffs would be able to assert the arguments that they are time-barred from making here in the defense of Rodriguez's action. 118 E. 60th Owners, 677 F.2d at 204 ("When a party is 'attacked,' he can rely on the statute of limitations as a shield, but when a party is the 'aggressor,' equity precludes the use of the time bar as a sword.").

11

### 2. **Plaintiffs Cannot Initiate a Declaratory Judgment Action Based on a Time-Barred Defense**

Next, plaintiffs argue that their declaratory judgment action is timely so long as defendant could bring a timely suit for payments, because their defenses would be the same claims that they bring in this declaratory judgment action.[6] Again, plaintiffs are incorrect. In a removed case, such as the instant case, the law is clear that a party cannot use a time-barred defense to initiate a declaratory judgment action. See 118 E. 60th Owners, 677 F.2d at 204. As the Court explained in 118 E. 60th Owners, the doctrine allowing a defendant to rely on defenses that would be barred by the statute of limitations if asserted affirmatively is "founded in considerations of fairness; it would be highly inequitable to permit a party to place a question before a court and then prevent the opposing party from disputing issues lying at the foundation of the claim." Id. at 203. As such, the doctrine is "intrinsically defensive." Id. at 204. To allow plaintiffs to rely on time-barred claims to initiate an action for declaratory judgment, as plaintiffs here argue, would "extend the

---

[6] We do not opine on when defendant's claims, if any, accrued. However, like plaintiffs, defendant is subject to a six-year statute of limitations. N.Y. C.P.L.R. § 213. Should defendant choose to bring a case, he can only do so for causes of action that have accrued in the prior six years.

12

intrinsically defensive doctrine beyond its confines." <u>Id</u>. at 204.

We therefore grant the motion to dismiss because plaintiffs' claims are untimely.

### B. Defendant's Sanctions Motion is Denied

Defendant has moved for sanctions against plaintiffs under Rule 11, essentially arguing that there is no basis for plaintiffs' claims regarding his termination. Having determined that we cannot rule on the circumstances of his termination in the context of the motion to dismiss due to the statute of limitations bar, it would be incongruous to do so in the context of defendant's sanctions motion. The sanctions motion is therefore denied.

## IV.  <u>Conclusion</u>

Accordingly, defendant's motion to dismiss is granted and defendant's motion for sanctions is denied. The Court respectfully directs the Clerk to terminate the open motions and close this case.

Dated:    New York, New York
          March 18, 2022

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE